IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV273-MU

| ELIUD OYEYO, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| BANK OF AMERICA, N.A., | ) | |
| Defendant. | ) | |

This matter is before the court upon the Defendant's Motion for Summary Judgment. The Plaintiff has filed a Response and the Defendant subsequently filed a Reply. Accordingly, this matter is now ripe for the court's consideration.

**FACTS**

Plaintiff, a former employee of the Defendant Bank of America, N.A. ("the Bank"), initiated this action on June 3, 2004, alleging that he had been discriminated against on the basis of race and national origin, in violation of Title VII and 42 U.S.C. § 1981. Plaintiff, who is of Kenyan origin, was employed by the Bank from June 1998 to 2003. He was employed as an Accounting Specialist in the Bank's Transaction Services Group, and was responsible for various clerical functions including the verification of information reported on vendor invoices with respect to armor car deliveries for the Bank. During 2002, the Transaction Services Group underwent a reorganization. Plaintiff and another employee, Bea Riley, were informed that their positions were being eliminated because their job duties were being outsourced to another company. As a result of the reorganization, a new position entitled Operations Manager was

1

created. This position required a minimum of two years in the field of transportation and logistics. Moreover, the Bank alleges that it was seeking a candidate with demonstrated ability to handle multiple complex tasks at the same time. Plaintiff alleges that his manager, Mr. Fitzgerald, recommended the Plaintiff for the new position. Plaintiff, and two other candidates, John McNeil and Peter Law, applied for the Operations Manager position, which had been posted internally. Each candidate was interviewed and John McNeil, a Caucasian, was selected for the position. Mr. McNeil had extensive experience in the operations and logistics field of two Fortune 500 companies. In addition, Mr. McNeil had previous transportation experience, including the development of policies and procedures. Mr. McNeil's supervisors felt he had superior organizational and logistical skills. Mr. McNeil, however, did not go to college. The Plaintiff held a B.S. in Accounting and an M.B.A.

The Bank contends that during a Bank-sponsored social event, the Plaintiff approached Transaction Services executive John Salazar and began discussing his career ambitions. He informed Mr. Salazar that, on his own initiative, he had passed the C.P.A. exam in California, but needed to acquire one year of supervised accounting experience to complete his certification.[1] Upon completion, his work had to be certified by a licensed CPA in order to receive his licensure. In response to this conversation, Mr. Salazar sought to assist the Plaintiff in reaching his personal goals of CPA licensure and arranged for Plaintiff to be temporarily assigned to the Bank's Corporate Audit Department ("Audit") so that he could acquire his one year of accounting experience. During the temporary assignment, Plaintiff remained on the Transaction

---

[1] It is undisputed that CPA licensure was purely a personal goal of the Plaintiff and in no way would affect the terms and conditions of his employment with the Bank.

Services Group's budget and payroll.

Plaintiff began his assignment with Audit in January 2003. He initially reported to Rick Beckman, but in April of 2003 began to report to Tom Calvert. The Bank claims that it was clear from the beginning of his assignment that Plaintiff did not have the basic skills one would expect of a person who had taken and passed the CPA exam. During the audits in which he participated, Plaintiff failed to elicit the necessary information from the business partners in order to complete the audit. When interviews were completed, Plaintiff was unable to adequately process the information into an accurate and complete audit report. His reports were substandard and untimely and had to be redone by other auditors. When it became clear that because of his lack of accounting skills, no auditor, as a licensed CPA, would be able to certify his work, Mr. Calvert informed the Plaintiff that his temporary assignment was ending. Regardless of his performance, Plaintiff would have been transferred back to the Transaction Services Group at the completion of his temporary assignment. Once he returned to the Transaction Services Group, he did not have a position, as it had been eliminated in the reorganization. Thus, Plaintiff was given the opportunity to post for other positions within the Bank for a period of two months, during which time he was paid his full salary. Plaintiff was ultimately unable to secure another position within the Bank and was terminated.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Summary judgment requires a determination of the sufficiency of the evidence, not a

weighing of the evidence. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242 (1986). The party opposing the motion may not rest upon its pleadings but instead must provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. <u>Id.</u> at 248. Courts will not consider "unsupported assertions," or "self-serving opinions without objective corroboration." <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 962 (4th Cir. 1996). <u>See</u> <u>also</u> <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 459 (4th Cir. 1989) ("[w]e have recognized that generalized testimony by an employee regarding his subjective belief that his discharge was the result of . . . discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge.").

**DISCUSSION**

Plaintiff claims he is the victim of unlawful race and national origin discrimination based upon three different employment actions by the Bank: (1) failure to promote him to the Operations Manager position; (2) the early termination of his temporary assignment to Audit; and (3) his ultimate termination from the Bank. As Plaintiff has no direct evidence of discrimination, his claims must be analyzed under the <u>McDonnell-Douglas</u> proof scheme. Plaintiff, therefore, has the initial burden of establishing a prima facie case of discrimination. <u>See</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981). If he does so, the burden then shifts to the Defendant to proffer a legitimate, nondiscriminatory reason for its adverse employment actions towards the Plaintiff. This burden is one of production, not persuasion. <u>See</u> <u>Henson v. Liggett Group, Inc.</u>, 61 F.3d 270, 274-75 (4th Cir. 1995). Plaintiff must then prove that the Defendant's proffered justification was a pretext for discrimination. Ultimately, the Plaintiff must persuade the court that he "has been the victim of intentional discrimination." <u>Burdine</u>, 450

4

U.S. at 256.

A. Failure to Promote:

The court need not address the merits of the Plaintiff's failure to promote claim, as he failed to exhaust his administrative remedies. It is undisputed that Plaintiff did not bring the failure to promote claim to the EEOC's attention within 180 days of the alleged discriminatory act. Plaintiff's EEOC Charge is devoid of any mention of a failure to promote.

Even if he had exhausted his administrative remedies, however, the Plaintiff's failure to promote claim would still fail. Plaintiff presented no evidence that he was more qualified than Mr. McNeil for the position of Operations Manager. Plaintiff only states that he was qualified because of his academic degrees. However, advanced degrees were not requirements for the position.

B. Early Termination of Audit Assignment:

In order to make out a claim of a discriminatory transfer back to Transaction Services, Plaintiff must show that (1) he was a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered a materially adverse employment action in the form of transfer; and (4) the defendant treated others outside the protected class more favorably. McClamb v. Rubin, 932 F.Supp. 706, 717 (M.D.N.C. 1996).

The Plaintiff has failed to establish that he performed satisfactorily while on temporary assignment to Audit. His performance evaluations reveal that with regard to specific audit functions, Plaintiff had serious performance issues. For example, the Bank found that Plaintiff lacked "associate awareness of and compliance with property security procedures," inappropriately used the general ledger account and was inconsistent with his tracking,

5

researching and resolving of customer inquiries and complaints. Further, the Bank found that Plaintiff "needs improvement" with respect to enhancing his interviewing skills and techniques. The Plaintiff argues that his performance evaluation states that he "meets expectations," however an examination of the evaluations reveals that he was rated as meeting expectations for general skills that all Bank employees are expected to possess, for example, understanding the requirements of the position, and performing database entry and analysis.

Likewise, Plaintiff cannot prove that he suffered a materially adverse employment action in the form of his transfer back to Transaction Services. In order to constitute an "adverse employment action," the action must "adversely affect 'the terms, conditions, or benefits' of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (quoting Von-Guten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001). Plaintiff has offered no evidence that the Bank's termination of his temporary assignment affected the terms or conditions of his employment. Plaintiff's completion of all necessary requirements for CPA licensure, and the subsequent receipt of such a license, would not have affected Plaintiff's employment status with the Bank. His status remained the same as it was prior to his loan to the Audit Department. In other words, even if Plaintiff's temporary assignment to Audit had lasted the full year, Plaintiff has failed to present any evidence that he would be in a different position as the one in which he found himself because of the early termination of the temporary assignment. He still would have had sixty days to obtain a new position because his position in Transaction Services had been eliminated.

In addition to the foregoing, Plaintiff has failed to meet his burden of showing that the Bank treated those outside the protected class more favorably than the Plaintiff. In fact, Plaintiff

has put forth no evidence regarding the Bank's treatment of any other employees who were outside of the protected group. Accordingly, Plaintiff has failed to establish a prima facie case of discrimination based upon the ending of this temporary assignment to Audit.[2]

C. Termination of Employment:

To survive summary judgment on this claim, Plaintiff must prove: (1) that he is a member of a protected group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he was terminated; and (4) his termination occurred under circumstances that raise a reasonable inference of unlawful discrimination. EEOC v. News & Observer Publishing Co., 180 F. Supp. 2d 763, 768 (E.D.N.C. 2001). Plaintiff has produced no evidence as to element number four. The undisputed evidence shows that after he returned from his temporary assignment with Audit, there was no position available for the Plaintiff in Transaction Services since his previous position had been eliminated. He was given an opportunity to post for other positions within the Bank. Being unsuccessful in this process, Plaintiff's employment was terminated. Plaintiff offers no evidence that he was treated differently than anyone outside the protected class. Accordingly, his claim of discriminatory treatment in his termination must fail as a matter of law.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED.

---

[2] As Plaintiff is unable to establish a prima facie case, the court does not reach Plaintiff's evidence as to a stray comment he alleges was made by Mr. Calvert regarding Plaintiff's background and accent. This evidence would only be relevant as to pretext. Even if the court considered such evidence, however, it does not rise to the level of evidence necessary to carry Plaintiff's burden of proving pretext, as the remark, at best, was stray and isolated. See Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999).

**Signed: January 5, 2006**

Graham C. Mullen
Chief United States District Judge